## CLEARFIELD COUNTY.

JANUARY TERM, 1883, No. 275.                    MAY 1, 1883.

## Barnes *v.* Berwind *et al.*

1. Where a deed conveys the right to all the coal under the soil, a stipulation therein by the grantor to indemnify the grantee from any damage that might arise from the giving way of the surface after the removal of the coal is notice to purchasers of the surface only from the time of record.

2. *Semble* that such a stipulation is a mere personal covenant of indemnity of the grantor.

3. In an action by the purchaser of the surface against the grantee of the mining rights for injuries caused by want of support, evidence of possession by the latter, under an agreement dated prior to the deed to the former, which agreement contained no release of damages, is immaterial, since inquiry would have resulted only in notice of the contents of the agreement.

4. Support to the surface is part of the estate reserved to the grantor, and is of common right.

5. As the owner of lands bounded by a street has title to the center of the street, the fact that the public might be injured by the falling in of the ground over which the streets were laid does not deprive such owner of the right to recover for the injury sustained by him.

6. The destruction of a spring, occasioned by the falling in of the surface for want of sufficient support, is remediable in damages, without reference to the question of negligence in the mining operations.

7. In such a suit evidence to show that other springs on the same hill where the surface did not cave in were also destroyed is immaterial.

Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.; MERCUR, C. J., absent.

Error to Court of Common Pleas of *Clearfield County*.

[Barnes v. Berwind et al.]

Case by William Barnes against Charles F. Berwind and Allison White, surviving partners of Berwind, White & Co.

Upon the trial in the Court below before ORVIS, J., the following facts appeared:

On May 10, 1873, Jesse Diggins agreed, by contract in writing, to sell and release unto J. A. G. White and L. G. Lingle "all the coal in the hill on land owned" by Jesse Diggins in Woodward township, and "also the timber on said hill under eight inches in diameter, and the privilege of opening the veins at the lowest point or outcrop for drainage." The agreement was recorded September 30, 1874.

White and Lingle took possession, cut a water-drain on the surface, and proceeded to mine the coal, which they removed through an opening on an adjoining tract called the Eureka mine.

In pursuance of the above agreement, Jesse Diggins made a deed, dated December 6, 1875, to Allison White, J. A. G. White, and Thomas L. Ogden, the vendees of White & Lingle, for the coal and timber as mentioned in the said agreement. In this deed, which recited that it was made to carry out the agreement of May 10, 1873, Jesse Diggins "agrees to hold the parties of the second part harmless, by reason of any damage which might arise from the surface giving way after the coal is removed, and hereby guarantees to the said parties of the second part, or their assigns, the right to take out and remove all the coal hereby conveyed." This deed was recorded December 10, 1875.

After the agreement of May 10, 1873, Diggins laid out a mining village on the side and at the base of the hill, and sold building lots, two of which, situate at the corner of Allegheny and High streets in this village, called Sterling, were purchased from him by William Barnes, the plaintiff, by agreement in writing, dated September 30, 1873. Barnes cleared the land, made some improvements on the lots, and occupied it with his family. The deed for the same was executed on July 24, 1874, and recorded January 27, 1877, and no reservation or mention of the coal and timber was made therein. It described the lot as bounded by Allegheny and High streets, and Oak and Cedar alleys.

In September, 1877, defendants having removed the coal under a portion of the streets on two sides of plaintiff's property and under plaintiff's property itself for several feet, no pillars or supports being left by defendants, the

surface caved in, making a wide hole three or four feet deep on each of these streets. One of these holes extended to within about twelve feet and the other to within about three or four feet of Barnes' fence. They broke down the fences, destroyed a spring, and rendered the lot unfit for building purposes, and by reason thereof plaintiff was compelled to open an alley for access to his property.

Defendants offered to prove by Peter Cameron, mining engineer, that other springs upon the hill were destroyed by mining the coal where the surface had not fallen in.

Plaintiff objected. The objection was sustained, exception allowed, and bill sealed.

The Court below charged the jury, *inter alia*, as follows:

" Where a man owns the coal or other minerals and the surface is not owned by another party, he has a perfect right to mine and take out all the minerals contained in that land of whatever kind, whether coal, or iron, or other minerals, in any way he chooses, without any regard whatever to the surface ; he can operate it just as he pleases and to his own convenience and advantage ; he can take out all the coal and need leave no pillars of coal or artificial support for the surface, and if the surface falls in, as a matter of course, he cannot be held liable for damages, because it is all his own. But it frequently happens in mining districts that one party owns the minerals and another party owns the surface. Where this is the case, the party owning the minerals has a perfect right to take out all the minerals contained in the land, but he is required to use such care and diligence in mining the coal or whatever minerals they are ; he must mine it in such a way as to not injure the property of the other party. He may take out all the minerals, but he must do it in such a manner as not to disturb the surface. While he has got a good and perfect title to the coal and can take it out whenever he sees fit to do so, yet he must take it out in such a way as not to destroy or disturb the property of the man who owns the surface. In mining minerals, the old common law maxim is very appropriate, which is, "that a person must use his own property in such a manner as not to injure that of his neighbor." In this case one party owned the surface and another owned the coal or minerals in it. [Mr. Barnes owned the surface and Berwind, White & Co. owned the coal, and they had a perfect right to take out every pound of coal that was in or under this one hundred and fifty feet square of

[Barnes *v.* Berwind *et al.*]

surface owned by Mr. Barnes, if they saw fit to do so, but in doing so they were bound to leave the surface in its natural condition, so as not to injure the property of Mr. Barnes, who owned the surface.] If they themselves had owned the surface, as well as the coal, they could have mined it in any way that they pleased without regard to the surface, but when the title to the surface is in another party, as it was in this case, they are required by law to mine the coal in such a manner so as to leave sufficient support for the surface, either by leaving pillars of coal standing sufficient to protect the surface, or they can remove the pillars if they put in artificial supports to keep the surface from falling in. They must mine the coal in such a manner as not to injure the property of the owner of the surface. In consequence of which mining two streets [High street and Allegheny street—in the village of Sterling, portions of the surface of which fell in in the immediate vicinity of Mr. Barnes' property—right in front of it and alongside, I believe. This the plaintiff alleges was an injury to the value of his property. By reason of this, the streets were made impassable and the fences surrounding his lots were also destroyed, all of which would have an effect to depreciate the value of his property,] and the plaintiff also further alleges by reason of the taking out of this coal a spring on his property was destroyed after the surface began to give way. There seems to be no dispute on the part of the company mining this coal that the surface did fall in along these two streets, nor they do not pretend to say that they used due diligence in leaving sufficient support there for the purpose of keeping up the surface, but admit that they removed the pillars of coal and did not put in artificial support. [Now, gentlemen of the jury, to whatever extent that injured the value of this property, the plaintiff is entitled to recover. Although the falling of the surface may not have been on that particular part inclosed by the fence, he would still be entitled to recover whatever damages he sustained.] His title to the property extends to the center of the street on each side where it was bounded by the streets. He bought his property bounded by the streets; it is described by the streets being boundaries of it, and his title, therefore, goes to the center of the street. The public have a right of passage simply over the street, but the title to it belongs to him. [So, then, whatever injury was caused to his property by the falling in of the surface between the center of the street and his fence, although the surface within the in-

closure remained intact, he is entitled to recover in this form of action, because it was their duty in taking out the coal to take it out in such a manner as to leave sufficient support there to prevent the surface from falling in, or if they had taken all the coal and removed all the pillars that were left standing to protect lives of the men while mining the coal, and had put in stones to keep up the surface, or other pillars of whatsoever was necessary to have supported the surface, then they would not be liable; but they having failed or neglected to do so, they are bound to make good the actual damages resulting to the property in consequence of the falling of the surface extending to the center of the street spoken of by the witnesses.]

"These damages must be actual damages that he has suffered. You have no right to award him a fabulous sum for damages, but he has a right to be paid for whatever inconvenience he has been put to, and for what depreciation his property has suffered in value because of this falling in of this surface. But if the property has depreciated from other causes than the mining of this coal; if it has depreciated because the mining of coal there is not carried on as extensively as at the time he purchased his property, or any other cause which might affect the value of the property in the neighborhood, of course they are not liable for that. They can only be held responsible for the depreciation of the value of the property caused by falling in of the surface in consequence of their not having left sufficient support to protect the surface. That applies to both the falling in of the surface as well as the destruction of the spring caused by the falling in of the surface. If, however, the taking out of the coal itself destroyed the spring without the surface having fallen in, then it was only a natural consequence of their right, and the plaintiff would have no remedy for the loss of his spring, and he would not be entitled to recover anything in this action for the destruction of the spring on his premises. If the natural consequence of simply taking out the minerals cut off the supply of water supplying that spring; if by taking out the coal it was necessary to destroy that spring, then it is a loss to the plaintiff for which he has no remedy. They owned the coal prior to the time that he owned the surface, and had a right to take all the coal out that was there; and any natural consequence resulting from their mining that coal affecting the water in that spring, as a matter of course they cannot be called to respond in damages for it. [But

[Barnes *v.* Berwind *et al.*]

if this spring was destroyed in consequence of the falling in of the surface, and the falling in of the surface was caused by the defendants mining their coal, then they are responsible for such result, and are liable for damages to whatever extent it depreciated the value of plaintiff's property; and the plaintiff in that event would be entitled to a verdict at your hands for such damages.] In ascertaining what the damages would be, you are not to give some fanciful value to the spring, but only such damages as it actually depreciated the value of the property.

"Now, gentlemen, in disposing of this question of damages, if from all the evidence you are satisfied the plaintiff is entitled to recover, you will first ascertain what damages was sustained by the falling in of the surface. If you find that the falling in of the surface was occasioned by the mining of coal by these defendants, and then if the destruction of the spring was caused by the falling of the surface in the manner we have stated, you will ascertain what the loss of the spring was and add it to the damages he sustained by the falling of the surface of the streets adjoining his property, and whatever you find the injury to the property to have been that the plaintiff is entitled to recover, and your verdict should be for that amount with interest from the time it occurred up to the present time.

"Gentlemen of the jury, these are all the instructions this case demands. You will take it and consider it under all the evidence and the rules we have laid down to you. If the plaintiff has satisfied you that he is entitled to recover, you will award him such damages as he is reasonably entitled to—not any wild or speculative damages. In this case, he is entitled, if at all, only to recover such damage as his property has really sustained, and whatever you find the amount of these injuries to be he is entitled to recover, with interest on it from the time it occurred up to the present time."

Counsel for defendants presented, *inter alia*, the following points of charge, which the Court refused to affirm:

4. That the contract of defendant with Diggins for the purchase of the coal, dated May 10, 1873, and the conveyance in pursuance thereof, dated December 6, 1875, must be taken together as the contract of the parties, and gave to the defendants the right to remove all the coal in the hill without liability to the plaintiff for the falling of the surface by reason thereof.

6. That if these lanes or alleys adjoining plaintiff's lots

are public highways, then the plaintiff as an individual has no right of action for an injury done to the surface thereof. No special injury or damage is laid in the pleadings in this case as resulting to him or his property from the want of the use of said streets or lanes, and he can not recover for such alleged injury to the surface in this action.

7. If the said lanes or alleys have never been opened and used as public highways, the same not being included within the limits of the boundaries of plaintiff's lots, he cannot recover in this action for the alleged injury to the surface thereof.

9. In order to entitle the plaintiff to recover in this case for the loss of the spring, he must satisfy the jury by affirmative evidence that it was done by the defendants carelessly or negligently conducting the mining operations.

Defendants' counsel excepted to the refusal of the Court to admit the testimony above mentioned, to the answers to the points, and to the charge of the Court.

November 21, 1882, verdict for plaintiff for $301 30, upon which judgment was afterwards entered.

Defendants thereupon took out a writ of error, assigning as error those portions of the charge included between brackets, the refusal of the Court to affirm the points of charge, and the overruling of defendants' offer to prove that other springs were destroyed by mining the coal.

*Frank Fielding* for plaintiffs in error.

The stipulation in the deed to plaintiffs in error for indemnification against any damage released them from all liability to defendant in error for the falling in of the surface. Jones *v.* Wagner, 16 P. F. Sm., 435 ; Bainbridge on Mines, 434 ; Lead. Cas. on Mines, 616 ; Scranton *v.* Phillips, 13 Norris, 15 ; Coleman *v.* Chadwick, 30 P. F. Sm., 87.

The destruction of public highways is an injury to the public, and defendant in error could not maintain an action without alleging and proving special damage to his property.

We are not liable for the destruction of the spring by mining, and the evidence should have been admitted to show that the mining, and not the subsidence of the surface, destroyed the spring.

*Murray & Gordon* for defendant in error.

The right of the surface owner to support is an absolute

[Barnes *v.* Berwind *et al.*]

right, and the failure of the mineral owner to leave in or
put in sufficient support is negligence *per se,* Jones *v.*
Wagner, 16 P. F. Sm., 434; Horner *v.* Watson, 29 *Id.*,
248; Coleman *v.* Chadwick, 30 *Id.*, 87; Carlin *v.* Chappel,
40 Leg. Int., 59.

The right to recover for injury by breaking of the sur-
face of the street rests upon the same ground as the right
to damages for the same kind of injury within the lines
of the lot. Lewis *v.* Jones, 1 Barr, 336; Cox *v.* Freedley,
9 Casey, 124; 2 Tr. & Haly, 4th Ed., 60.

Plaintiff is entitled to recover for loss of the spring,
though occasioned by the ordinary operations of mining.
Coleman *v.* Chadwick, 30 P. F. Sm., 87.

The stipulation in the deed could have no effect upon
one whose rights attached before its date.


October 1, 1883, the opinion of the Court was delivered
by GREEN, J.

It might well be questioned whether the stipulation in
the deed from Diggins to White and Lingle to hold the
latter harmless against damages that might arise from the
giving way of the surface after the removal of the coal
underneath is anything more than the mere personal
covenant of indemnity of the grantor. It is such in
terms, and we see no sufficient reason for giving it any
larger effect than this, but we do not decide the question
because it does not necessarily arise under the evidence.
In the deed, this provision is described as something in
addition to the original article of agreement for the sale
of the coal, and so in fact it is. That agreement provides
only for the sale of the coal, and of the timber of less
than eight inches' diameter. Nothing whatever is said
as to any release or indemnity for damages to the surface
in the removal of the coal. It is dated May 10, 1873, and,
being recorded September 30, 1874, would be notice of its
contents from that time. The deed from Diggins and
wife to Barnes was made July 24, 1874. Whether there was
such taking of possession by White & Lingle, under the
agreement of May 10, 1873, as would put Barnes upon in-
quiry, and charge him with notice, is not material, as he
would only be chargeable with notice of the contents of
the agreement, and according to that paper there was no
grant of the right of surface support by the vendor, Dig-
gins. We have so recently reviewed the subject of the
right to surface support, in the case of Carlin & Co. *v.*
Chappel, 40 Leg. Int., 59, that any discussion of it at this
time is unnecessary. We said, in Coleman *v.* Chadwick,

30 P. F. S., 81, that "support is part and parcel of the reserved estate; it is of common right, and hence must pass, if at all, by express grant, and is not to be defeated by mere implication arising from language that does not import such an effect." The same doctrine was practically affirmed in Jones *v.* Wagner, 16 P. F. S., 434, and Horner *v.* Watson, 29 *Id.*, 248. Scranton *v.* Phillips, 13 Norris, 15, decides that the right of support might be conveyed by the express words of a grant, and in no wise conflicts with the doctrine of the previous cases. But here there was no such conveyance, nor anything indicating that the grantor intended to part with his right to surface support. That right, consequently, remained with him and those claiming under him until, at least, the date of the deed to White & Ogden, December 6, 1875. But, in the meantime, Barnes, the plaintiff, had acquired the property sold to him, by deed of July 24, 1874, and was entitled to the full benefit of the rule which protected his right of support. We see no error, therefore, in the charge of the Court below in affirming this right and in holding the defendants liable in damages for injury to that right. Nor do we discover any error in the matters covered by the remaining assignments. The sixth and seventh points of the defendants were properly refused. In Lewis *v.* Jones, 1 Barr, 336, we held that one who deposited fence rails on a highway commits a trespass against the owner of the soil, and in the opinion, such a trespass was likened to that which would result from the deposit of any offensive material in the highway in front of the owner's dwelling-house. That the owner of land bounded by the side of a street has title to the center in the absence of express reservation to the contrary, was decided in Cox *v.* Freedley, 9 Cas., 124, and Paul *v.* Carver, 2 Cas., 223, and is the undoubted law of this Commonwealth. The fact that the public might be injured by the falling in of the ground over which the streets were laid in no way deprived the plaintiff of the right to recover for the injury sustained by him. The loss of plaintiff's spring was also remediable in damages, without reference to the question of carelessness or negligence in the mining operations of the defendants, if it was occasioned by the falling in of the surface for want of sufficient support, which was the only way in which the Court submitted that subject to the jury. We cannot see the materiality of the offer to prove by one of the witnesses that he knew of other wells or springs that were dried up on the same hill. The evidence is not printed, but we are bound to assume, under the charge, that this

spring was lost by the falling in of the surface, and, if so, it is of no consequence whether other springs were dried up or not.

Judgment affirmed.